## Office of Disciplinary Counsel v. Chadwick

Disciplinary Board Docket no. 3 D.B. 1997, 72 D.B. 2003.

To the Honorable Chief Justice and Justices of the Supreme Court of Pennsylvania:

GENTILE, *Member,* February 7, 2005—Pursuant to Rule 208(d)(2)(iii) of the Pennsylvania Rules of Disciplinary Enforcement, the Disciplinary Board of the Supreme Court of Pennsylvania herewith submits its findings and recommendations to your honorable court with respect to the above-captioned petition for discipline.

## I. HISTORY OF PROCEEDINGS

On May 22, 2003, Office of Disciplinary Counsel filed petitions for discipline at no. 3 D.B. 1997 and no. 72 D.B. 2003 against respondent, H. Beatty Chadwick. No. 3 D.B. 1997 charged respondent with violations of the

Rules of Professional Conduct and Rules of Disciplinary Enforcement arising from his conviction of two counts of simple assault. No. 72 D.B. 2003 charged respondent with violations of the Rules of Professional Conduct arising out of his conduct during the course of his divorce action. Respondent filed answers to the petitions on July 2, 2003.

A disciplinary hearing was held on the petition at no. 3 D.B. 1997 on October 30, 2003, before Hearing Committee 2.07 comprised of Chair Jay H. Karsch, Esquire, and Members Lester G. Weinraub, Esquire, and James Keath Fetter, Esquire. Respondent was represented by James C. Schwartzman, Esquire.

Following the submission of briefs by the parties, the committee filed a report on March 3, 2004, and recommended a private reprimand.

Petitioner filed a brief on exceptions on March 19, 2004. Respondent filed a brief on exceptions and reply brief on March 23, 2004. Petitioner filed a brief opposing exceptions on April 10, 2004.

A disciplinary hearing was held on the petition at no. 72 D.B. 2003 on December 2, 2003, before Hearing Committee 2.06 comprised of Chair Anton H. Rosenthal, Esquire, and Members James J. Byrne Jr., Esquire, and Terry D. Weiler, Esquire. Respondent was represented by Dana Pirone Garrity, Esquire.

Following the submission of briefs by the parties, the committee filed a report on September 23, 2004, finding that respondent violated the Rules of Professional Conduct as charged in the petition for discipline and recommending that he be suspended for a period of three years.

Respondent filed a brief on exceptions on October 12, 2004. Petitioner filed a brief opposing exceptions on October 29, 2004.

By board motion to consolidate, the petitions for discipline were consolidated for adjudication at the meeting of November 17, 2004.

## II. FINDINGS OF FACT

The board makes the following findings of fact:

(1) Petitioner, whose principal office is situated at Suite 1400, 200 North Third Street, Harrisburg, Pennsylvania 17101, is invested, pursuant to Rule 207 of the Pennsylvania Rules of Disciplinary Enforcement, with the power and duty to investigate all matters involving alleged misconduct of an attorney admitted to practice law in the Commonwealth of Pennsylvania and to prosecute all disciplinary proceedings brought in accordance with the various provisions of the aforesaid rules.

(2) Respondent, H. Beatty Chadwick, was born in 1936 and was admitted to practice law in the Commonwealth of Pennsylvania in 1961. He last maintained an office for the practice of law at 280 South Roberts Road, Box 431, Bryn Mawr, Pennsylvania. Respondent has been incarcerated in the Delaware County Prison, Thornton, PA 19323 since April 5, 1995.

(3) Respondent is subject to the disciplinary jurisdiction of the Disciplinary Board of the Supreme Court.

(4) Respondent has no prior history of discipline.

*Charge at No. 3 D.B. 1997*

(5) On November 2, 1994, in connection with divorce litigation pending between respondent and his wife, the Court of Common Pleas of Delaware County issued a bench warrant for respondent's arrest after finding him in civil contempt.

(6) Respondent was represented by counsel when the bench warrant was issued and was aware that an order had been issued for his arrest.

(7) The bench warrant was transferred from Delaware County to the sheriff's office of Montgomery County for possible execution upon respondent at an address located in Montgomery County.

(8) Deputy Sheriff Frank LoGrippo attempted to execute the warrant in November or December 1994 but did not locate respondent.

(9) On April 4, 1995, Deputy LoGrippo received information that respondent would be at a dental appointment at 1420 Locust Street in Philadelphia at 7 a.m. on April 5, 1995.

(10) Deputy LoGrippo and his partner, Deputy Richard Zadroga, went to the vicinity of 1420 Locust Street at approximately 6 a.m. on April 5, 1995.

(11) At 7:10 a.m. the deputies entered the dental office, identified themselves to the receptionist and asked what room respondent was in. The receptionist confirmed that respondent was present and indicated which room he was in.

(12) The deputies were dressed in jeans and sweatshirts and had neck badges and wallet badges.

(13) The deputies walked into the room and found respondent seated in a dental chair facing away from the door.

(14) The deputies called him by name, said they were from the Montgomery County Sheriff's Department and that they had a warrant for his arrest and asked him to stand up. Respondent initially denied who he was. The deputies again asked him to stand.

(15) Respondent jumped up and started punching wildly. A physical struggle ensued involving respondent and the two deputies. Deputy Zadroga received a black eye and respondent had lacerations on his forehead, two black eyes, and a bloody nose.

(16) Respondent was transported to Delaware County Prison and has remained incarcerated on the civil contempt findings since the day of his arrest.

(17) Respondent was charged with two counts of simple assault, two counts of recklessly endangering another person, and two counts of resisting arrest.

(18) On August 15, 1996, following a two-day nonjury trial, the court found respondent guilty of two counts of simple assault and not guilty of two counts of recklessly endangering another person. The court entered judgment of acquittal on the two counts of resisting arrest, as the Montgomery County deputies had not complied with statutory requirements for executing a foreign warrant and did not have official authority to arrest respondent in Philadelphia.

(19) On August 15, 1996, respondent was sentenced to six months probation on each of the two counts of simple assault, to be served concurrently.

(20) Respondent advised the Supreme Court of Pennsylvania of his conviction on November 18, 1996. The Supreme Court referred the notice of conviction to the Disciplinary Board by order dated January 3, 1997.

(21) Office of Disciplinary Counsel filed the petition for discipline at no. 3 D.B. 1997 on May 22, 2003.

(22) Respondent has not been prejudiced in any meaningful way by the delay in the filing of the petition for discipline.

(23) Respondent presented three character witnesses, each of whom have backgrounds of exceptional accomplishment. Each testified to respondent's outstanding abilities as a lawyer and his impeccable reputation as an honest, law-abiding citizen.

*Charge at No. 72 D.B. 2003*

(24) Respondent is the defendant in the divorce action captioned *Barbara Jean Crowther Chadwick v. H. Beatty Chadwick,* filed in the Court of Common Pleas of Delaware County.

(25) By order dated April 29, 1994, the court froze all assets in respondent's name or held for respondent's benefit in several financial institutions and prevented respondent from further assigning, concealing, secreting or dissipating marital assets.

(26) Respondent willfully failed to comply with the mandates of the April 29, 1994 court order in that, on May 6, 1994, he redeemed an annuity contract in the amount of $296,389 and deposited it in Banco Mercantil del Istmo in Panama, and, on May 13, 1994, he re-

deemed an annuity contract in the amount of $291,403 and deposited it in Banco Mercantil del Istmo in Panama.

(27) By order dated July 22, 1994, the court:

(a) ordered respondent to return $2.5 million which respondent had previously transferred out of the United States in February 1993;

(b) enjoined respondent from further assigning, concealing, secreting or dissipating marital assets;

(c) directed the marital home be listed for sale;

(d) directed respondent to pay $75,000 on account of his wife's counsel fees and costs; and

(e) directed respondent to surrender his passport to the court.

(28) Thereafter respondent willfully failed to comply with any of the mandates of the July 22, 1994 court order, as listed above.

(29) By order dated August 29, 1994, the court found respondent in contempt for deliberate failure and refusal to comply with its orders of April 29, 1994 and July 22, 1994, and ordered and placed further restrictions on all of respondent's financial holdings.

(30) By a second order dated August 29, 1994, the court again found respondent in contempt of the court's previous orders of April 29, 1994 and July 22, 1994, and ordered and decreed the release of certain funds from North American Security Life Insurance Co., Nationwide Life Insurance Co., American Skandia, Grace Foods Inc., Union Bank of Switzerland, Banco Mercantil del Istmo, and Banco de Santander to Albert Momjian, Esquire, counsel for respondent's wife.

(31) On October 21, 1994, due to respondent's failure to comply with previous court orders, the court entered two orders, as follows:

(a) an order appointing a third party to participate in the sale of marital property; and

(b) an order directing that all payments to Unitrust accounts otherwise payable to respondent be paid to Albert Momjian, Esquire, escrowee, to be held in an escrow account in the names of Albert Momjian and David Auerbach, as escrowees, pending further order of the court.

(32) By order dated November 2, 1994, the court found respondent in contempt of court for willful violations of the court's order of July 22, 1994, and directed that respondent be apprehended and incarcerated until further hearing.

(33) Respondent did not turn himself into arresting authorities.

(34) Respondent was arrested during a dental appointment, as set forth in the above findings.

(35) From April 1995 until the present, the court has called respondent into court and has offered respondent the opportunity to purge himself of the contempt.

(36) Respondent has failed to purge himself of the contempt.

(37) On April 22, 2001, the Honorable Kenneth A. Clouse, the judge currently presiding over the case, found that respondent remains in continuing contempt of court orders.

(38) Following his incarceration, respondent challenged the contempt order through direct appeal and his incarceration through habeas corpus proceedings.

(39) All appellate courts either quashed the appeal as interlocutory or affirmed the contempt and incarceration orders.

(40) The Supreme Court of Pennsylvania denied respondent's petitions for habeas corpus and the United States Supreme Court denied certiorari.

(41) Respondent has denied that he is in contempt of court orders.

(42) Respondent admits that he transferred $2.5 million out of the country February 1993.

(43) Respondent has failed to cooperate with the Delaware County Court in presenting evidence as to the location and/or alleged disposition of the money, even after being given the opportunity to assist the court in tracing the funds.

(44) In September 2003, respondent attempted to assign funds in contravention of an October 21, 1994 Delaware County court order directing that the funds be paid directly to Albert Momjian, Esquire and held in escrow until further order of the court.

## III. CONCLUSIONS OF LAW

By his actions as set forth above in no. 3 D.B. 1997, respondent violated the following Rule of Disciplinary Enforcement:

(1) Simple assault is a "serious crime" as defined by Pa.R.D.E. 214(i). Respondent's conviction for two counts of simple assault constitutes an independent basis for discipline under Pa.R.D.E. 203(b)(1).

By his actions as set forth above in no. 72 D.B. 2003, respondent violated the following Rules of Professional Conduct:

(1) R.P.C. 8.4(c)—It is professional misconduct for a lawyer to engage in conduct involving dishonesty, fraud, deceit or misrepresentation.

(2) R.P.C. 8.4(d)—It is professional misconduct for a lawyer to engage in conduct that is prejudicial to the administration of justice.

## IV. DISCUSSION

This matter is before the board on two petitions for discipline against respondent, H. Beatty Chadwick. The first petition charges respondent with professional misconduct arising from his conviction of two counts of simple assault. The second petition charges respondent with professional misconduct arising from his actions in connection with his divorce proceedings. These matters were considered separately at two different hearings before two different Hearing Committees. Upon a motion to consolidate made on November 17, 2004, these matters were consolidated for the purpose of adjudication before the board.

The facts of these matters are straightforward. Respondent was involved in acrimonious divorce proceedings with his wife in the early 1990s. A court order was entered prohibiting respondent from assigning, concealing, secreting, or dissipating marital assets. Respondent did not comply with this court order. He redeemed two annuity contracts and deposited money in a Panamanian bank. Respondent was court ordered to return and pay into the court $2.5 million which he had previously transferred out of the country in 1993. Respondent refused to do so. Respondent was held in civil contempt and, ultimately, the court issued a bench warrant for

respondent's arrest in November 1994. Respondent was arrested at a dental appointment in April 1995. He did not go peacefully with the two deputy sheriffs and instead provoked a physical altercation. Respondent was subsequently charged with, and convicted of, two counts of simple assault. He was transported to the Delaware County Prison on the day of his arrest and has remained there ever since. Respondent filed numerous habeas corpus petitions and appeals, all of which were unsuccessful. Despite opportunities by the court to purge himself, respondent has not done so. In fact, in September 2003, respondent attempted to assign funds, in violation of court order. While respondent admits that he removed approximately $2.5 million outside the country, he will not reveal the location of these assets and maintains he does not have control over the funds in question.

Petitioner has provided proof by a preponderance of the evidence that is clear and satisfactory that respondent engaged in professional misconduct in the case at no. 72 D.B. 2003. *Office of Disciplinary Counsel v. Surrick*, 561 Pa. 167, 749 A.2d 441 (2000).

Respondent transferred funds outside the country in an attempt to place the funds outside the reach of his ex-wife. Ten years and numerous appeals later, respondent continues to maintain that he does not have control over the funds. Notwithstanding judicial findings by the Delaware County Court of Common Pleas, the Superior Court of Pennsylvania, and the United States Court of Appeals for the Third Circuit affirming the Delaware County Court's order, respondent chooses to stay in prison and asserts he has no control over the assets, although he has

produced no evidence concerning these funds when given the opportunity to do so. Respondent's conduct is deceitful, dishonest, and is prejudicial to the administration of justice.

In the case at no. 3 D.B. 1997, respondent's criminal conviction for two counts of simple assault constitutes a per se basis for discipline. As a preliminary issue, respondent raised the doctrine of laches in regard to the delay in the filing of the petition for discipline. While the Supreme Court referred respondent's conviction to the board in 1997, petitioner did not file the petition for discipline until 2003. The reason for this delay was due to the civil contempt matter that is the subject of no. 72 D.B. 2003. While that matter was ongoing, petitioner treated the criminal conviction matter as being consolidated with it, although no formal effort was initially made to consolidate. Petitioner petitioned to consolidate the two matters in 2003; however, the board denied the motion and petitioner filed the petition for discipline at no. 3 D.B. 1997.

The committee concluded from the record that respondent was not prejudiced by the delay. The board concurs with this conclusion. While respondent argues that he was prejudiced by the pendency of a proceeding which had the potential of impeding his ability to practice law, he presented no evidence that he was compelled to reject offers of legal employment. The inescapable fact is that respondent has been incarcerated since April 1995 due to the civil contempt and the proceeding at no. 3 D.B. 1997 did not cause a change in his position.

Respondent has engaged in professional misconduct. The board is charged with determining an appropriate

sanction based on the seriousness of this misconduct. In doing so, the board must account for any aggravating and mitigating circumstances.

The Hearing Committee in no. 3 D.B. 1997 recommended a private reprimand. The Hearing Committee in no. 72 D.B. 2003 recommended a three-year suspension. Prior disciplinary cases involving contempt orders have resulted in suspension from the practice of law. *In re Anonymous No. 31 D.B. 88*, 5 D.&C.4th 308 (1989) (four-year suspension for an attorney who failed to comply with a court order directing him to pay spousal support, failing to return marital property, and misrepresentation); *In re Anonymous No. 111 D.B. 96,* no. 370 Disciplinary docket no. 3 (Pa. October 17, 1997) (One year and one-day suspension for failing to comply with a court order to pay support and failing to appear at the contempt hearing); *In re Anonymous No. 153 D.B. 97,* no. 547 Disciplinary docket no. 3 (Pa. November 22, 1999) (three-year suspension for willful contempt of support orders and failure to pay court-imposed fine).

In addition to respondent's contempt of court, he has been convicted of simple assault. The board can reasonably conclude, based on prior cases of simple assault by attorneys, that this misconduct, standing alone, would warrant private discipline. *In re Anonymous No. 39 D.B. 85,* 47 D.&C.3d 376 (1987). The serious nature of respondent's combined misconduct persuades the board that a five-year suspension is warranted. Respondent has engaged in a nearly 10-year course of misconduct. He remains in open defiance of numerous valid and enforceable court orders. In his attempt to avoid the authority of the court system, he committed simple assault. He has

shown no remorse for his actions nor has he demonstrated any comprehension of the wrongful nature of his conduct. There are no compelling mitigating factors to weigh in favor of respondent. The totality of the record demonstrates that respondent is unfit to practice law at this time.

## V. RECOMMENDATION

The Disciplinary Board of the Supreme Court of Pennsylvania recommends that the respondent, H. Beatty Chadwick, be suspended from the practice of law for a period of five years on the consolidated charges.

It is further recommended that the expenses incurred in the investigation and prosecution of this matter are to be paid by the respondent.

Board Members Saidis and Gephart dissented and would recommend disbarment.

Board Member Nordenberg did not participate in the November 17, 2004 adjudication.

## ORDER

And now, April 27, 2005, upon consideration of the report and recommendations of the Disciplinary Board dated February 7, 2005, the petition for review and response thereto, the petition for review is denied, and it is hereby ordered that H. Beatty Chadwick be and he is suspended from the bar of this Commonwealth for a period of five years, and he shall comply with all the provisions of Rule 217, Pa.R.D.E.

It is further ordered that respondent shall pay costs to the Disciplinary Board pursuant to Rule 208(g), Pa.R.D.E.